**No. 25-50682**

# In the United States Court of Appeals For the Fifth Circuit

SANTANDER CONSUMER USA, INC.,

*Plaintiff-Appellant,*

*v.*

THE CITY OF SAN ANTONIO,
AND ALANIS WRECKER SERVICE, INC.,

*Defendant-Appellees,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

**BRIEF FOR PLAINTIFF-APPELLANT**

Nicholas A. Duston, Esq.
NORRIS McLAUGHLIN, P.A.
400 Crossing Blvd, 8th Fl.
Bridgewater, NJ 08807
*Attorneys for Plaintiff-Appellant,*
*Santander Consumer USA, Inc.*

## Certificate of Interested Persons

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an intertest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. **Plaintiff-Appellant:**

   Santander Consumer USA, Inc. is a wholly-owned subsidiary of Santander Holdings, USA, which is a subsidiary of Banco Santander, S.A., a publicly traded company.

2. **Defendants-Appellees**:

   The City of San Antonio is a municipality in the State of Texas.

   Alanis Wrecker Service, Inc., which does business under the name "San Antonio Vehicle Impound Facility," is believed to be privately owned.

3. **Counsel for Plaintiffs-Appellants**:

   Nicholas A. Duston of Norris McLaughlin, P.A.

   Everett New of Everett New and Associates PC

   Rudolph Meola of the Meola Law Firm

4. **Counsel for Defendant-Appellee San Antonio**:

   Jacqueline M. Stroh of the Law Office of Jacqueline M. Stroh, P.C.

   Mark Kosanovich of Fitzpatrick & Kosanovich, P.C.

5. **Counsel for Defendant-Appellee Alanis Wrecker Service, Inc**.:

   Paul Fletcher of Langley & Banack, Inc.

i

Sara Murray of Langley & Banack, Inc.

**NORRIS McLAUGHLIN P.A.**

By: _/s/ Nicholas Duston_
Nicholas A. Duston, Esq.
*Attorneys for Plaintiff-*
*Appellant Santander Consumer*
*USA, Inc.*

ii

**<u>Statement Regarding Oral Argument</u>**

Plaintiff-Appellant Santander Consumer USA Inc. requests oral argument as it is Santander's position that argument may significantly aid the decisional process in this case, which involves multiple intertwined legal issues.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons ................................................................. i

Statement Regarding Oral Argument ........................................................ iii

TABLE OF CONTENTS ............................................................................ iv

TABLE OF AUTHORITIES ....................................................................... vii

Jurisdictional Statement .............................................................................1

Issues Presented for Review .......................................................................1

STATEMENT OF THE CASE ...................................................................2

I.  Santander's interests in the vehicles at issue. ...............................2

II.  Defendants' vehicle impounding policy and reliance on a state-law
     hearing procedure that does not address the deprivations at issue. .................3

III.  Defendants' notification procedure. ..............................................6

IV.  San Antonio's joint operation with Wrecker. ...............................7

V.  Defendants' unconstitutional detention of Santander's collateral and
     eventual destruction of Santander's liens. ....................................7

SUMMARY OF ARGUMENT .................................................................11

ARGUMENT .............................................................................................16

I.  Standard of Review ......................................................................16

II.  The District Court erred in finding that Defendants' policies provided
     Santander with Due Process. .......................................................16

     A.  A lien on a motor vehicle embodies numerous property rights
         and Defendants' policy and actions deprived Santander of those
         rights. ....................................................................................16

B.    Defendants afforded no *meaningful* hearing, because the Chapter 2308 action does not address the 8 deprivations at issue. ..............................................................................................19

C.    The District Court failed to analyze the Mathews factors, which confirm Defendants' policy does not afford due process. ..................23

    i.    Santander's private interests in the Vehicles were substantial...................................................................................24

    ii.    The current policy creates substantial risk of erroneous deprivation.................................................................................25

    (1) Precluding Santander from taking possession for 10 days............25

    (2) Precluding Santander from taking possession unless San Antonio is satisfied that payment is 30-days past due..............25

    (3) Precluding Santander from taking possession unless it provides a bond in the "mortgage amount." .............................26

    (4) Excluding Santander from possession unless "a separate indemnification agreement is signed."......................................27

    (5) Excluding Santander until storage fees are paid. ..........................27

    (6) Terminating Santander's rights and interests by deeming them to be waived and abandoned............................................28

    (7, 8) Selling vehicles (sometimes to San Antonio for $1), and appropriating unclaimed proceeds............................................30

    iii.    There would be great value in additional or different safeguards...................................................................................31

    iv.    Defendants' interests do not justify the current policy..................32

    v.    All three Mathews factors favor Santander's argument for a different policy involving a meaningful hearing that addresses all relevant deprivations.................................................34

D.    Any reliance on the Chapter 2308 action fails solely because that action cannot possibly occur at a meaningful time......................34

E.     Defendants' policy fails to provide due process for three additional reasons. ..............................................................37

F.     The District Court erred in holding that disposition of seized property does not require due process. ...............................39

G.     The District Court incorrectly suggested it was Santander's responsibility to undo Defendants' unconstitutional acts. ..................41

III.   The District Court erred in finding that Defendants did not violate the Fourth Amendment. ...........................................................................42

A.     The Fourth Amendment's requirement that seizures be "reasonable" applies to all of Defendants' actions. ...........................43

B.     Defendants' policies and actions interfered with Santander's possessory interests in violation of the Fourth Amendment. ..............47

IV.   The District Court erred in finding that Defendants did not violate the Takings Clause. ...........................................................................50

V.    Santander's conversion and replevin claims were established. ......................54

VI.   Summary judgment should be granted to Santander. ....................................54

CONCLUSION ..............................................................................................55

CERTIFICATE OF SERVICE ...............................................................................1

CERTIFICATE OF COMPLIANCE .........................................................................1

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

### <u>FEDERAL CASES</u>

<u>Acadia Tech., Inc. v. United States</u>,
458 F.3d 1327 (Fed. Cir. 2006) ........................................................52

<u>Alexandre v. Cortes</u>,
140 F.3d 406 (2nd Cir. 1998) ...........................................................41

<u>Armstrong v. Manzo</u>,
380 U.S. 545 (1965) ..........................................................................38

<u>Armstrong v. United States</u>,
364 U.S. 40 (1960)........................................................................passim

<u>Asinor v. D.C.</u>,
111 F.4th 1249 (D.C. Cir. 2024)......................................................43

<u>Baker v. City of McKinney, Tex.</u>,
84 F.4th 378 (5th Cir. 2023) ......................................................52, 53

<u>Bd. of Regents of State Colleges v. Roth</u>,
408 U.S. 564 (1972)..........................................................................16

<u>Bell v. Burson</u>,
402 U.S. 535 (1971)...............................................................11, 20, 32

<u>Bennis v. Michigan</u>,
516 U.S. 442 (1996)......................................................................51, 52

<u>Bowlby v. City of Aberdeen, Miss.</u>,
681 F.3d 215 (5th Cir. 2012) ...........................................................24

<u>Breath v. Cronvich</u>,
729 F.2d 1006 (5th Cir. 1984) ..............................................20, 39, 41

<u>Brewster v. Beck</u>,
859 F.3d 1194 (9th Cir. 2017) ..........................................................47

<u>Brewster v. City of Los Angeles</u>,
672 F. Supp. 3d 872 (C.D. Cal. 2023)...............................................46

Butler v. Castro,
896 F.2d 698 (2d Cir. 1990) .................................................................38

Caniglia v Strom,
593 U.S. 194 (2007)..............................................................................45

Cedar Point Nursery v. Hassid,
594 U.S. 139 (2021)..............................................................................29

Cleveland Bd. of Ed. v. Loudermill,
470 U.S. 532 (1985)..............................................................................21

Connecticut v. Doehr,
501 U.S. 1 (1991)............................................................................16, 18

Coolidge v. New Hampshire,
403 U.S. 443 (1971)..............................................................................42

Cooper v. City of Greenwood, Miss.,
904 F.2d 302 (5th Cir. 1990) .....................................................17, 40, 42

Craig v. Carson,
449 F. Supp. 385 (M.D. Fla. 1978)........................................................39, 41

Davis Oil Co. v. Mills,
873 F.2d 774 (5th Cir. 1989) ................................................................29

Duncan v. Barnes,
592 F.2d 1336 (5th Cir. 1979) ...............................................................43

Ford Motor Credit Co. v. New York City Police Dep't,
394 F. Supp. 2d 600 (S.D.N.Y. 2005) ....................................................30

Ford Motor Credit Co. v. NYC Police Dep't,
503 F.3d 186 (2d Cir. 2007) ............................................................17, 24

Frein v. Pennsylvania State Police,
47 F.4th 247 (3rd Cir. 2022)...........................................................51, 52

Fuentes v. Shevin,
407 U.S. 67 (1972)..........................................................................passim

Hall v. Meisner,
    51 F.4th 185 (6th Cir. 2022) ..................................................................29

Harrell v. City of New York,
    138 F. Supp. 3d 479 (S.D.N.Y. 2015) ....................................................46

Hawaii House Auth. v. Midkiff,
    467 U.S. 229 (1984)...............................................................................51

Honda Lease Tr. v. Malanga's Auto.,
    152 F.4th 477 (3d Cir. 2025) ...........................................................passim

Horne v. Dep't. of Agric.,
    576 U.S. 350 (2015)..........................................................................50, 53

Illinois v. Caballes,
    543 U.S. 405 (2005)...............................................................................44

Jenkins v. United States,
    71 F.4th 1367 (Fed. Cir. 2023) ..............................................................52

Lathon v. City of St. Louis,
    242 F.3d 841 (8th Cir. 2001) .................................................................40

Lawrence v. Reed,
    406 F.3d 1224 (10th Cir. 2005) ..................................................21, 24, 40

Logan v. Zimmerman Brush Co.,
    455 U.S. 422 (1982)...............................................................................39

Loretto v. Teleprompter Manhattan CATV Corp.,
    458 U.S. 419 (1982)...............................................................................17

Los Angeles v. David,
    538 U.S. 715 (2003)...............................................................................20

Manuel v. City of Joliet, Ill.,
    580 U.S. 357 (2017)...............................................................................43

Mathews v. Eldridge,
    424 U.S. 319 (1976)........................................................................passim

Matthias v. Bingley,
    906 F.2d 1047 (5th Cir. 1990) ......................................................passim

McKee v. Heggy,
    703 F.2d 479 (10th Cir. 1983) ...............................................................29

Memphis Light, Gas & Water Div. v. Craft,
    436 U.S. 1 (1978)....................................................................................37

Mennonite Bd. of Missions v. Adams,
    462 U.S. 791 (1983).........................................................................passim

Mercedes-Benz Fin. Servs. USA, LLC v. City of New York,
    770 F. Supp. 3d 643 (S.D.N.Y. 2025) ...................................................33

Morgan v. Wofford,
    472 F.2d 822 (5th Cir. 1973) .................................................................27

Mullane v. Cent. Hanover Bank & Tr. Co.,
    339 U.S. 306 (1950)................................................................................37

Netto v. Amtrak,
    863 F.2d 1210 (5th Cir. 1989) ...............................................................16

Norton v. Shelby County,
    118 U.S. 425 (1886)................................................................................54

Ohio Bell Tel. Co. v. Public Utilities Comm'n.,
    301 U.S. 392 (1937)................................................................................54

Parks v. "Mr. Ford",
    556 F.2d 132 (3d Cir. 1977) ..................................................................24

Pesce v. City of Des Moines, Iowa,
    439 F. Supp. 3d 1101 (S.D. Iowa 2020)................................................38

Phillips v. Washington Level Found.,
    524 U.S. 156 (1988)..........................................................................29, 53

Propert v. D.C.,
    948 F.2d 1327 (D.C. Cir. 1991)............................................................20

Rosemont Taxicab Co. v. Philadelphia Parking Auth.,
    327 F. Supp. 3d 803 (E.D. Pa. 2018)......................................................45

Santander Consumer USA, Inc. v. Cnty. of Suffolk,
    No. 20-CV-2656(JS)(AKT), 2021 WL 4480574 (E.D.N.Y. Sept. 30,
    2021) ...............................................................................................49

Santander Consumer USA, Inc. v. Nassau,
    623 F. Supp. 3d 6 (E.D.N.Y. 2022) ......................................................33

Sheppard Federal Credit Union v. Palmer,
    408 F.2d 1369 (5th Cir. 1969) ....................................................18, 26

Small Engine Shop, Inc v. Cascio,
    878 F.2d 883 (5th Cir. 1989) ...............................................................42

Soldal v. Cook Cnty., Ill.,
    506 U.S. 56 (1992)..............................................................................14, 44

South Dakota v. Opperman,
    428 U.S. 364 (1976).............................................................................44, 45

Tate v. Dist. of Columbia,
    627 F.3d 904 (D.C. Cir. 2010)...............................................................52

Todman v. Mayor of City of Baltimore,
    104 F.4th 479 (4th Cir. 2024) ...............................................................29

Toyota Motor Credit Corp. v. Borough of Wyoming, PA,
    No. 3:23-cv-00377, 2025 WL 978209 (M.D. Pa. Mar. 31, 2025).......................49

Tulsa Pro. Collection Servs., Inc. v. Pope,
    485 U.S. 478 (1988)..............................................................................16

Tyler v. Hennepin Cnty., Minnesota,
    598 U.S. 631 (2023)..............................................................29, 30, 50

U.S. v. James Daniel Good Real Property,
    510 U.S. 43 (1983)...............................................................................23, 32

U.S. v. McRae,
    702 F.3d 806 (5th Cir. 2012) ................................................................43

United States v. Cardenas,
   9 F.3d 1139 (5th Cir. 1993) ................................................................42

United States v. Farrell,
   606 F.2d 1341 (D.C.Cir.1979) ..........................................................42

United States v. Jacobsen,
   466 U.S. 109 (1984)..........................................................14, 43, 44, 48

United States v. McKinnon,
   681 F.3d 203 (5th Cir. 2012) .............................................27, 44, 45

United States v. Place,
   462 U.S. 696 (1983)...........................................................................48

United States v. Salvucci,
   448 U.S. 83 (1980)..............................................................................48

Vlandis v. Kline,
   412 U.S. 441 (1973)............................................................................25

Walters v. Wolf,
   660 F.3d 307 (8th Cir. 2011) ............................................................40

Walton v. Arizona,
   497 U.S. 639 (1990)............................................................................38

## STATE CASES

Badaiki v. Miller,
   No. 17-cv-00450, 2019 WL 922289 (Tex. App., Feb. 26, 2019).......22

Black Bull Towing LLC v. Ybarra,
   No. 14-cv-00227, 2015 WL 3637933 (Tex. App. June 11, 2015) .....22

City of Houston v. Carlson,
   393 S.W.3d 350 (Tex. App. 2012)....................................................18

Evanston Ins. Co. v. Legacy of Life, Inc.,
   370 S.W.3d 377 (Tex. 2012) .............................................................16

Ford Motor Credit Co. v. Powers,
   613 S.W.2d 30 (Tex. Civ. App. 1981)..............................................18

John Deloach Enterprises, Inc. v. Telhio Credit Union, Inc.,
   582 S.W.3d 590 (Tex. App.—San Antonio 2019, no pet.) ..........................50, 54

Spann v. City of Dallas,
   111 Tex. 350 (1921)...................................................................................18

Torres v. Cont'l Apartments,
   No. 18-cv-00215, 2019 WL 2211478 (Tex. App. May 21, 2019) .....................22

## FEDERAL STATUTES

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4).............................................1

28 U.S.C. § 1367 .......................................................................................1

42 U.S.C. § 1983 ....................................................................................1, 55

## STATUTES

Ordinance 19-54(a)(3)...............................................................................4, 6

Ordinance Chapter 2308 ...........................................................................22, 34

Ordinance § 19-51 through 19-55................................................................3

Tex. Bus & Com. Code Ann. § 9.609..........................................................25

Tex. Bus. & Com. Code § 9.603(a) .............................................................17

Tex. Bus. & Com. Code § 9.609(a)(1)..........................................................17

Tex. Occ. Code § 2303.151-161 .................................................................28

Tex. Occ. Code § 2303.154 .......................................................................28

Tex. Occ. Code § 2308.455(1)(C) ...............................................................22

Tex. Occ. Code § 2308.456 .......................................................................34

Tex. Occ. Code § 2308.458(c)....................................................................22

1997 Tex. Sess. Law Serv. Chapter 165 .......................................................5

Tex. Transp. Code § 683.014 and 683.012................................................................4

Texas Occupations Code § 2308.458 ...............................................................5, 28

§ 683.003 of the TEXAS TRANSPORTATION CODE....................................6, 38

U.C.C. § 9-601 Comment 4 ..............................................................................49

## CONSTITUTIONAL PROVISIONS

Fourth Amendment .......................................................................................passim

Fifth Amendment ....................................................................................1, 14, 51

Fourteenth Amendment ................................................................................passim

**Jurisdictional Statement**

Plaintiff-Appellant Santander Consumer USA, Inc. ("Santander") filed three lawsuits in the District Court, consolidated on June 3, 2024, alleging violations of 42 U.S.C. §1983 and related state law claims. Santander claimed Defendant-Appellees The City of San Antonio ("San Antonio") and Alanis Wrecker Service, Inc. ("Wrecker") deprived Santander of its constitutionally protected property interests in 34 vehicles which Defendants had seized, impounded, and sold free of Santander's liens, violating the Fourth, Fifth, and Fourteenth Amendments. The District Court had federal question jurisdiction pursuant to 28 U.S.C. §§1331, 1343(a)(3) and 1343(a)(4), as well as supplemental jurisdiction 28 U.S.C. § 1367.

Santander filed a motion for summary judgment, which Defendants both opposed along with cross-motions for summary judgment. Without argument, on August 5, 2025, the District Court denied Santander's motion and granted both Defendants' motions, disposing of all parties' claims and dismissing the action.

Santander timely filed a notice of appeal on August 20, 2025.

This Court has jurisdiction pursuant to 28 U.S.C. §1291 over the final order of the District Court.

**Issues Presented for Review**

Whether the District Court erred in granting Defendant-Appellee's, and denying Santander's, summary judgment motions, dismissing Santander's 42 U.S.C.

1

§1983 claims under the Fourth, Fifth, and Fourteenth Amendment relating to San Antonio/Wrecker's appropriation and destruction of Santander's property rights in 34 vehicles which Defendants-Appellees impounded, deemed abandoned, and sold.

## STATEMENT OF THE CASE

**I.      Santander's interests in the vehicles at issue.**

Santander[1] is a finance company which takes assignments of retail installment contracts relating to the purchases of motor vehicles, services those contracts, and holds liens in the related vehicles. ROA.3689.  These consolidated litigations involve 34 vehicles in which Santander holds (or held) perfected liens (the "Vehicles"). ROA.3689.   Different non-party customers (the "Customers")[2] entered into retail installment contracts ("RICs") with dealerships to finance the purchase of the Vehicles.  ROA.3689.   The dealerships assigned each RIC to Santander, which thereby obtained liens in each Vehicle. ROA.3689.  Santander held those liens at the time San Antonio seized the Vehicles.  ROA.263-264.

Each of the RICs provides multiple grounds for default triggering Santander's right to repossess the Vehicles.  ROA.266. These include (i) non-payment **and** (ii) other non-monetary defaults, including government seizure or the assertion of a

---

[1] Santander also does business as "Chrysler Capital," which name may appear on some documents relating to this action.  ROA.262.

[2] Where reference is made to a specific Vehicle, it shall be referred to by the Customer's name (*i.e.* the "Cortes Vehicle"). ROA.262.

third-party lien.  Id.  For some Vehicles, a monetary default existed before Defendants' seized that Vehicle, while other Customers remained current at the time of seizure.  ROA.268-269.  Each RIC permits Santander to repossess the Vehicles based on **_either_** type of default. ROA.266-267; see also ROA.3703.

**II.      Defendants' vehicle impounding policy and reliance on a state-law hearing procedure that does not address the deprivations at issue.**

San Antonio's impound ordinance §19-51 through 19-55 (the "Ordinance") dates back to 1959, and the provisions which deprive lienholders of rights in impounded Vehicles were added in 1964.  The Ordinance has never contained a provision affording interested parties a hearing concerning its application to seized vehicles. It is, on its face, a no-hearing policy.

Ordinance §19-54 contains seven (7) provisions requiring San Antonio (and its contractor, Wrecker) to deprive lienholders of property rights in impounded vehicles.  Additionally, San Antonio disposes of seized vehicles through the legal fiction of "deeming" a lienholder's rights to be abandoned if the lienholder does not comply with the Ordinance's mandates within 20 days after San Antonio's transmission of a letter stating San Antonio's intent.  Describing its policy to a Texas District Court, San Antonio stated:

> The San Antonio Police Department impounds an average of eighty (80) vehicles per day for traffic incidents and law enforcement related seizures. All vehicles transported to and stored at the City of San Antonio Vehicle Impound Facility (the "Impound Facility") are done under the sole direction of the San Antonio Police Department

("SAPD"). SAPD contracts with a third-party, Alanis Wrecker Service Inc., to operate and maintain the Impound Facility. [Wrecker] is responsible for the day-to-day operation of the Impound Facility, including auctioning vehicles that have been deemed abandoned.... **If an owner or lienholder of a vehicle fails to reclaim a vehicle... then each party "waives all rights and interests in the item; and consents to the sale of the item by public auction...."**

ROA.1028-1031 (emphasis added)(quoting Tex. Transp. Code Ann. § 683.014 (a) (1) (A)).

All told, San Antonio's policy consists of eight (8) provisions which deprive a lienholder of its collateral, the impounded vehicles:

1.  Automatically excluding the lienholder from possession for 10 days following the towing. Ordinance 19-54(a)(3).

2.  Excluding the lienholder from possession unless the lienholder proves to San Antonio's satisfaction that there is at least a 30-day monetary default in payments due to the lienholder. Id.

3.  Excluding the lienholder from possession unless a bond is submitted in an amount equal to the "mortgage amount." Id.

4.  Excluding the lienholder from possession unless "a separate indemnification agreement" is signed. Id.

5.  Excluding the lienholder from possession until storage fees are paid. Id.

6.  Deeming the lienholder's rights and interests to be waived and abandoned unless the vehicle is recovered within 20 days from notification. ROA.3690; see also ROA.1028-1031 (referring to Tex. Transp. Code §683.014 and 683.012).

7.  Selling the vehicle and clearing the lien from the title. ROA.3692.

8.  Keeping the sales proceeds if they remain unclaimed during a short window. ROA.3709.

In 1995, the State of Texas enacted The Texas Transportation Code, which included a mechanism whereby a person who wished to object to the *towing* of a vehicle could file a legal action in the justice of the peace court. 1997 Tex. Sess. Law Serv. Ch. 165 (S.B. 898)(repealed Sept. 1, 2007). But the hearing created by then Tex. Transp. § 685.001-009 was expressly limited: "[t]he sole issue in a hearing under this chapter is whether probable cause existed for the removal and placement of vehicle." Id.  On September 1, 2007, the legislature transferred Section 685.009 to Texas Occupations Code §2308.458, where it was again amended in 2011, with jurisdiction still limited to "whether probable cause existed for the removal and placement of the vehicle," along with one additional issue: "whether the towing charge imposed or collected" exceeded three enumerated limitations.  Tex. Occ. Code § 2308.458.

Here, the Court found that the only form of hearing available relating to Defendants' impounding, retention, and sale of the Vehicles was the possibility of an action under that Texas Statute (the "Chapter 2308 action").  ROA.3690, 3705. The District Court overlooked the core deficiency in this policy: it provides, at most, a limited hearing on the propriety of towing and calculation of tow fee but cannot address ***any*** of the 8 above-referenced deprivations wrought by Defendants' policy.

## III.    Defendants' notification procedure.

After San Antonio has a vehicle towed to its impound facility, Defendants send a "First Notice" letter to the owner and any lienholder recorded on the vehicle title. ROA.3690. The letter states there is a "right under Sec. 683.003 of the TEXAS TRANSPORTATION CODE to determine if probable cause existed to tow this vehicle." ROA.625.  But the cited statute, captioned "Conflict of Laws; Effect on Other Laws" states:

(a)    Sections 683.051-683.055 may not be read as conflicting with Sections 683.074-683.078.

(b)    This chapter does not affect a law authorizing the immediate removal of a vehicle left on public property that is an obstruction to traffic.

Tex. Transp. Code § 683.003.  This "First Notice" letter does not say anything about the 8 deprivations of a lienholder's rights that  comprise Defendants' policy for the release of impounded vehicles to lienholders.

If a vehicle remains ten days after being impounded,[3] Defendants send a second letter captioned: "Law Enforcement Abandonment Notice." ROA.3690; <u>see also</u> e.g. ROA.783-785.  This second letter again incorrectly refers to "Sec. 683.003" in referring to Texas Law providing "[t]he vehicle owner… a right… to determine if probable cause existed to tow this vehicle." ROA.783-785.  Each "Abandonment

---

[3] Meaning the owner did not retrieve it, because lienholders are expressly forbidden from doing so for 10 days.  Ordinance 19-54(a)(3).

6

Notice" also states that "[t]his vehicle will be disposed of in accordance with applicable laws… if it is not reclaimed within 20 days." ROA.783-785. Some add that "[f]ailure to reclaim the vehicle <u>will result</u> in A) a waiver… of all right, title and interest in the vehicle, and B) consent to the sale of the vehicle…." ROA.783-785.

**IV.     San Antonio's joint operation with Wrecker.**

Wrecker operates San Antonio's vehicle impound facility for San Antonio. ROA.1062-1125. The Defendants' contract contains no consideration flowing from San Antonio to Wrecker. ROA.1135. Rather, the Contract authorizes Wrecker to collect money from vehicle owners or lienholders who reclaim possession of seized vehicles, and to retain 15% of the proceeds from selling vehicles (with 85% returned to San Antonio). ROA.1087-1088 at §4.1 ("Customers/Lien-holders are required to pay an Impound Fee, Notification Fee and a Storage Fee….") and §4.4.1(b)(discussing remission of "85%[] of the Auction Sales Price" to San Antonio).

**V.     Defendants' unconstitutional detention of Santander's collateral and eventual destruction of Santander's liens.**

San Antonio impounded the 34 Vehicles for a number of reasons including the driver's arrest or commission of a traffic offense, or the Vehicles being disabled and blocking traffic. ROA.3690. The, "San Antonio Ordinance… establishes the City and [Wrecker's] vehicle impoundment and disposal procedures," which Defendants applied to these Vehicles. ROA.3689.

San Antonio's seizure of the Vehicles, and Wrecker's assertion of a right to retain the Vehicles to secure payment of its storage fees, constituted *two* types of non-monetary default under Santander's RICS. ROA.267. Thus, absent Defendants' policy, Santander would have had the right to retrieve possession of the Vehicles. Defendants' policy prohibits Santander from recovering the Vehicles unless it complies with Defendants' demands, including proof that Santander's Customers were more than 30 days in ***payment*** default "regardless of the lienholder's contractual agreement with the vehicle's owner." ROA.940 at ¶25, 972-973 at ¶¶15 & 16.

For all 34 Vehicles, Defendants identified Santander to be the lienholder and accordingly sent a "First Notice" to Santander. ROA.3690. Shortly after receiving each, Santander contacted Defendants to recover the Vehicles. ROA.268. For all 34 Vehicles, Defendants subsequently send the second "Law Enforcement Abandonment Notice" letter. ROA.3690. For each of the Vehicles, Santander attempted to comply with Defendants' paperwork requirements by filling out a hold harmless/indemnity, an authorization letter for the local agent, a VSF form, including a copy of the RIC and a copy of the title or other proof of Santander's perfected lien, and authorizing payment of Wrecker's storage fees. ROA.270.

Santander did ***not*** take any action that would indicate it had waived or abandoned its rights or interests in any of the Vehicles, and, in fact, communicated

8

with Wrecker regarding its desire to repossess all of them. ROA.270. However, Santander did not commence a Chapter 2308 action or request a hearing under that statute, ROA.3690, and did not provide the requisite proof of a 30+ day monetary default, ROA.3692.

Wrecker ultimately decided, without the availability of any neutral review, that Santander did not comply with the provisions of San Antonio's Ordinance. ROA.3692, 271. In particular, Santander did not provide a specific letter to its Customers stating the Customer was at least 30 days behind on a payment. ROA.3692, 1162. Wrecker claims it "[w]ould have released the Santander Vehicles to Santander if Santander timely complied with requirements for the release of vehicles," including the provision of such a letter. ROA.971-972. However, in many instances the customers were current on payment as of the date of seizure. ROA.268-269.[4] Defendants' demand also rests on the assumption that Santander sends a letter to a Customer on the same day the Customer misses a payment, but Santander does not necessarily transmit such a letter at that time. ROA.269-270. The demands may, then, be impossible to comply with until much later (60 or 90 days or more after a payment default) without Santander creating and transmitting a

---

[4] Including the Angeles, Barragan, Goertz, Hernandez, Jiminez, Longoria, Medina, Munro, Pineda, Seals, Stephens, and Tucker Vehicles. ROA.268-269 (noting relevant dates of payment default and seizure).

9

bespoke letter to its customer solely to comply with Defendants' demands. ROA.269-270.

When Wrecker decided, unilaterally and without neutral review, that Santander has not complied with all demands of the Ordinance, and that 20 days had passed from transmission of the second "Notice" letter, Defendants "deemed" that Santander had waived and abandoned its rights and interests in all 34 vehicles, even though Santander had taken steps to retrieve them. ROA.3706, 270.

Santander retrieved four of the Vehicles,[5] paying $25,078.05 total in storage fees. ROA.3692, 274-275 (detailing the specific amounts). Defendants continue to detain 2 Vehicles,[6] ROA.3693, for which Santander's lawyer sent an explicit demand for release on June 7, 2024, ROA.1186-1187. Wrecker sold the other 28 Vehicles, wiping out Santander's liens. ROA.272, 792-848. Of those, Wrecker sold 24 at an ostensibly arms-length auction. Id. Wrecker "sold" the remaining 4[7] to San Antonio for $1 in non-arms-length "sales." ROA.794, 806, 830, 842.

Defendants' policy does not afford any lienholder an opportunity for a hearing regarding any of the 8 deprivation's of a lienholder's property rights under Defendants' policy. ROA.936. San Antonio did not obtain a warrant or other

---

[5] The Hernandez, Mooso, Salazar, and Tucker Vehicles.

[6] The Haynes and Needham Vehicles.

[7] The Ahuyon, Cortez, Medina, and Stephens Vehicles.

judicial directive regarding the Vehicles.  ROA.936-937.  San Antonio offered no compensation after depriving Santander of its collateral and using those Vehicles (and their sale proceeds) to compensate Wrecker for its services.  ROA.938.

**SUMMARY OF ARGUMENT**

The lienholder deprivation provisions of San Antonio's official municipal seizure Ordinance, enacted in 1964, have never been updated to incorporate contemporary concepts of constitutional safeguards required by the Fourteenth, Fourth and Fifth Amendments.

The Fourteenth Amendment mandates due process of law, which means that when the government deprives persons of property rights, the government must provide affected persons the opportunity to participate in the government actions, and protest those deprivations, through a hearing.  "The fundamental requirement of due process is the opportunity to be heard at a *meaningful* time and in a *meaningful* manner."  Mathews  v.  Eldridge,  424  U.S.  319,  333  (1976)(quotation omitted)(emphasis added).  This includes participation and neutral review of law enforcement's decisions concerning the disposal of seized personal property.  Matthias v. Bingley, 906 F.2d 1047, 1052 (5th Cir. 1990).  For a hearing to be meaningful, it must allow review of all of the government actions which deprived the claimant of property rights. Bell v. Burson, 402 U.S. 535, 542 (1971).

11

Defendants' policy solely includes the Chapter 2308 action created by state law, which is expressly limited to the propriety of a vehicle's towing and the calculation of the tow fee. No other hearing is available, and there is no review of any of the other 8 deprivations under Defendants' policy. Thus, Defendants' actions deprived Santander of its rights in the Vehicles without due process, neutral review, or any form of oversight. These deprivations included:

1.  Automatically excluding the Santander from possession for 10 days;

2.  Excluding Santander from possession where there is not a 30+ day monetary default in payments due to the lienholder;

3.  Excluding Santander from possession where a bond is not submitted in an amount equal to the value of the "mortgage amount;"

4.  Excluding Santander from possession unless Santander executes a separate indemnification agreement;

5.  Excluding Santander from possession until storage fees are paid;

6.  Terminating Santander's rights and interests by deeming them to be waived and abandoned if a vehicle remains impounded 20 days after the waiver notice;

7.  Selling the vehicles and clearing the liens from the title; and

8.  Keeping the sales proceeds when they are not claimed within a short amount of time.

The Ordinance has no provision for affording any sort of hearing; it is a no-hearing ordinance. Thus, the violation of due process is evident. A lienholder cannot challenge, ever, the alteration of its repossession rights, the requirement that it

12

provide a bond or indemnity, or the legal fiction that it is "deemed" to have abandoned its collateral merely because it has not provided certain paperwork.

Despite the Ordinance containing no provisions for affording any opportunity for neutral review, the District Court erroneously found that the existence of the unrelated Chapter 2308 action satisfied Due Process merely because "the Court [w]as unable to locate a single case, where a vehicle owner or lienholder is provided a hearing to challenge the propriety of the tow… and is provided an additional hearing prior to 'disposal-related deprivations.'" ROA.3705. The District Court conflated the irrelevant question of the *number* of hearings with the highly important question of whether the purportedly available hearing was provided at a *meaningful* time and in a *meaningful* manner, without performing the requisite Mathews analysis. Id. The District Court erred, because the Chapter 2308 action allows review of only two issues—probable cause to tow, and the correctness of the tow fee—neither of which are the 8 lienholder deprivations imposed by San Antonio's policies. Because the only gesture at affording a hearing is not provided at a meaningful time and in a meaningful manner, this Court should hold that the Defendants violated Santander's right to Due Process.

In addressing the Fourth Amendment, the District Court erred when concluding that Defendants' actions complied with the Fourth Amendment's community caretaking warrant exception. The Court's found that because

13

Defendants had seized the Vehicles under a valid warrant exception, their actions did not constitute an unreasonable seizure. ROA.3701. The Court again misses the point, which is that regardless of whether San Antonio was excused from obtaining a warrant, its actions were unreasonable insofar as they were not related to the seizure's ostensible purpose (community caretaking). The Court did not address that "reasonableness is still the ultimate standard under the Fourth Amendment," Soldal v. Cook Cnty., Ill., 506 U.S. 56, 71 (1992), and that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment[]...." United States v. Jacobsen, 466 U.S. 109, 124 (1984).

Here, it is indisputable that once the Vehicles were safely within San Antonio's impound facility, they posed no threat to public safety. None of the Defendants' 8 deprivations of Santander's rights had anything to do with public safety. When Santander sought to relieve Defendants from the burden of having to safely care for the Vehicles, Defendants' continued interference with Santander's right to take possession were unreasonable and violated the Fourth Amendment.

Finally, in addressing Santander's Takings claim, the District Court erred by finding the uncompensated destruction of Santander's liens (by summarily deeming those lien rights to be waived and abandoned) did not violate the Fifth Amendment. Armstrong v. United States, 364 U.S. 40, 48 (1960). There is no blanket Taking

14

Clause exception for all police activity, and when Defendants' conduct was performed (a) without a hearing, and (b) in excess of permissible conduct under the Fourth Amendment, Defendants also violated the Takings Clause.

## ARGUMENT

### I.      Standard of Review.

This Court reviews the grant and/or denial of summary judgment *de novo*.

Netto v. Amtrak, 863 F.2d 1210, 1212 (5th Cir. 1989).

### II.     The District Court erred in finding that Defendants' policies provided Santander with Due Process.

#### A.      A lien on a motor vehicle embodies numerous property rights and Defendants' policy and actions deprived Santander of those rights.

A lien is a constitutionally protected property right. Armstrong, 364 U.S. at

44; Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 (1983). "Property

interests… are created and their dimensions are defined by existing rules or

understandings that stem from an independent source such as state law." Bd. of

Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). "[P]roperty does not

refer to a thing but rather to the rights between a person and a thing." Evanston Ins.

Co. v. Legacy of Life, Inc., 370 S.W.3d 377, 382-83 (Tex. 2012).

Once those rights are created, they are protected by the Constitution, and the

Supreme Court has never restricted that protection solely to ownership or possessory

interests; in fact, even *unsecured* interests are protectible. Tulsa Pro. Collection

Servs., Inc. v. Pope, 485 U.S. 478, 485 (1988) (stating as to "an unsecured claim"

that "such an intangible interest is property protected by the Fourteenth

Amendment"); Connecticut v. Doehr, 501 U.S. 1, 11 (1991) (finding that an

attachment violated the owner's property rights even though it did not interfere with the owner's possession and did not affect rentals from existing leaseholders); Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (noting that "non-possessory use" and the right to exclude are constitutionally protected property rights). The Fifth Circuit has stated that Constitutionally protected rights exist even where there is no possessory interest whatsoever. Cooper v. City of Greenwood, Miss., 904 F.2d 302, 306 (5th Cir. 1990) (finding a protected property right in firearms that the owner can no longer legally possess).

A lienholder has several property rights, including the *contractual* rights between lienholder and owner/debtor, as well as rights in relation to the collateral itself. Ford Motor Credit Co. v. NYC Police Dep't, 503 F.3d 186, 191 (2d Cir. 2007) (citing Armstrong, 364 U.S. at 46). Texas law entitles the parties to a security agreement to define default in their security agreement so long as "the standards are not manifestly unreasonable." Tex. Bus. & Com. Code §9.603(a). It also entitles a lienholder to *immediately* take possession of collateral upon a default, with no 10-day or 30-day waiting periods. See Tex. Bus. & Com. Code § 9.609(a)(1).

17

Texas Courts have recognized non-monetary defaults, such as the assertion of a lien by another creditor.[8]   Ford Motor Credit Co. v. Powers, 613 S.W.2d 30, 34 (Tex. Civ. App. 1981) (a clause declaring a default to exist when a vehicle is subject to a mechanics lien is enforceable).  In fact, Texas law permits a lienholder to retake possession of collateral for any good-faith reason based on general insecurity clauses, and without any 10-day or 30-day waiting period.  Sheppard Federal Credit Union v. Palmer, 408 F.2d 1369, 1370 (5th Cir. 1969); see also Doehr, 501 U.S. at 11 (noting this common aspect of lending in finding an attachment would trigger non-monetary default).

The right to possession is the most significant in the bundle of rights because upon the deprivation of that right "the value of the property is annihilated…." Spann v. City of Dallas, 111 Tex. 350, 355-56 (1921); City of Houston v. Carlson, 393 S.W.3d 350, 358 (Tex. App. 2012) ("A governmental decision to take away possession and use of property clearly diminishes the bundle of property rights…").

San Antonio's Ordinance resulted in a re-ordering of Santander's otherwise available rights in the Vehicles.  As soon as San Antonio seized the Vehicles, Santander had a right under the RICs and Texas law to retake possession

---

[8] Wrecker may deny the overt assertion of a third-party lien, but that is literally what it does when it withholds possession until it receives payment.  LIEN, Black's Law Dictionary (11th ed. 2019) ("possessory lien. (1840) A lien allowing the creditor to keep possession of the encumbered property until the debt is satisfied.")

immediately based on that non-monetary default. ROA.265-267 at ¶¶9-13. And separately, the day each Customer missed a payment, Santander had the *immediate* right to recover each Vehicle, without waiting 30 days and without transmitting any particular type of letter to the Customer. Id.

The Ordinance summarily deprived Santander of these property rights by eliminating non-monetary defaults, requiring Santander to wait 10 days from the tow, and requiring Santander to wait 30 days from a monetary default. The Ordinance also sought to deprive Santander of other rights by forcing it to exchange one form of property (its money, a bond, an indemnity promise) for another (its collateral). And the Ordinance eventually turns a temporary deprivation into a permanent one, destroying *all* rights in the Vehicles by "deeming" Santander to have abandoned them when it did not comply with the demands of the Ordinance.

**B.    Defendants afforded no *meaningful* hearing, because the Chapter 2308 action does not address the 8 deprivations at issue.**

After Fuentes, it has been settled that "a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." Fuentes v. Shevin, 407 U.S. 67, 84-85 (1972).

> By requiring notice and an opportunity to be heard, the Due Process Clause permits persons whose interests may be adversely affected by governmental decisions to participate in those decisions. This participation, in turn, reduces the number of erroneous deprivations of life, liberty, or property.

Matthias, 906 F.2d at 1052.

Courts across the country have unanimously required municipalities that seize vehicles to provide the opportunity for a *meaningful* hearing to affected persons to challenge *both* the propriety of the impound *and* the government's reasons for withholding the vehicle (*i.e.* conditions of its release). Los Angeles v. David, 538 U.S. 715, 718 (2003) (discussing a timely hearing on "whether the car was illegally parked"); Breath v. Cronvich, 729 F.2d 1006, 1011 (5th Cir. 1984)(discussing hearing as to "lawfulness of removing [an owner's] car ***and*** assessing charges")(emphasis added). "Every court which has considered th[is] issue has held that the owners of towed vehicles—whether illegally parked, abandoned or junk— are entitled, at minimum, to [1] post-deprivation notice and [2] a hearing." Honda Lease Tr. v. Malanga's Auto., 152 F.4th 477, 484–85 (3d Cir. 2025)(quoting Propert v. D.C., 948 F.2d 1327, 1332 (D.C. Cir. 1991))(alterations in original).

No case discusses any particular *number* of hearings—one, two, or more— because that is irrelevant.  The question is whether a hearing is provided at a meaningful time and in a meaningful manner. Mathews, 424 U.S. at 333.  A hearing is not meaningful where it does not address the government's deprivation; "[i]t is a proposition which hardly seems to need explication that a hearing which excludes consideration of an element essential to the decision… does not meet [the due process] standard." Bell, 402 U.S. at 542; see also Fuentes, 407 U.S. at 97 ("[I]t is axiomatic that the hearing must provide a real test.").  When the government

20

deprives a person of property rights in several ways, a meaningful hearing must address *all* of those deprivational actions. Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 546 (1985) ("The opportunity to present reasons… why proposed actions should not be taken is a fundamental due process requirement.").

Here, Defendants policy involves depriving lienholders of property rights in 8 ways, none of which are addressed by any hearing. Each of the 8 deprivations would result in Santander's pre-existing lien rights being altered (*i.e.* by limiting its repossession to 30+ day monetary defaults), exchanging significant other rights for its collateral (*i.e.* by providing a bond, indemnity, and storage fees), or ultimately losing all of its rights (*i.e.* when they are "deemed" abandoned). These deprivations are significant, and imposed with no ability to challenge them whatsoever.

San Antonio's policy, Ordinance § 19-54, is unconstitutional on its face because it contains no opportunity for neutral review of San Antonio's actions. Matthias, 906 F.2d at 1058 (finding an ordinance allowing disposal of seized property without affording a hearing as to the disposal "blatantly violates the Due Process Clause."); Lawrence v. Reed, 406 F.3d 1224, 1233 (10th Cir. 2005) (noting that a vehicle disposal ordinance lacking a hearing component is an "obvious constitutional violation.").

Thus, Defendants' violation of due process was manifest.

Nevertheless, the District Court held that Due Process could be supplied by engrafting onto the Ordinance the separate[9] Chapter 2308 action. The Court erroneously found that giving *some* hearing at *some* time met the requirement of a *meaningful* hearing at a *meaningful* time. The error is plain based on the Chapter 2308 action's three defining features:

- The only issues authorized to be reviewed are whether probable cause existed for the towing of the vehicle, and whether the "towing charge" was greater that legal limits. Tex. Occ. Code §2308.458(c).

- The person deprived of the vehicle must initiate the legal action and pay the filing fee. Tex. Occ. Code §2308.455(1)(C).

- The person deprived of the vehicle has the burden of proving no probable cause. §2308.458(b-1)(1).

The Chapter 2308 action is not meaningful because it does not allow review of the 8 deprivations under the Ordinance. There is no subject matter jurisdiction to review any other issues, and addressing them would result in an impermissible advisory opinion.[10] If Santander appeared and stated that it did not wish to challenge

---

[9] Chapter 2308 was not created until 1995, meaning for over 30 years San Antonio did not even make a pretense of affording a hearing to lienholders relating to the deprivations wrought by its Ordinance. Chapter 2308 did not rectify this deficiency because it addresses only two issues, and was never intended to be a catch-all for individualized deprivations imposed by a local municipality.

[10] This is confirmed by various Texas Court decisions. Torres v. Cont'l Apartments, No. 18-cv-00215, 2019 WL 2211478, at *4 (Tex. App. May 21, 2019) ("[T]he tow hearing only encompasses whether there was probable cause for the tow and if the tow charge was correct."); Black Bull Towing LLC v. Ybarra, No. 14-cv-00227, 2015 WL 3637933, at *2 (Tex. App. June 11, 2015) (same); Badaiki v. Miller, No. 17-cv-00450, 2019 WL 922289, at *3 (Tex. App., Feb. 26, 2019) (same).

22

a tow or the calculation of the tow fee, but *did* want a ruling on its ability to repossess a vehicle immediately or its intent *not* to abandon a vehicle, the court would rightly be perturbed that it was being asked to review matters over which it has no jurisdiction. Indeed, it would be frivolous for a lienholder to try to use the Chapter 2308 action to address Defendants' 8 Ordinance-mandated deprivations, because those matters are not contemplated in the statutory grant of authority.

A Chapter 2308 action does not afford a *meaningful* hearing regarding these separate 8 deprivations, because it provides no hearing on them at all.  A process where the person being deprived of property is not allowed to speak in their defense is not due process. U.S. v. James Daniel Good Real Property, 510 U.S. 43, 54 (1983). Here, Defendants did not afford Santander the opportunity to speak in its own defense against any of the 8 lienholder-directed mandates of the Ordinance, which caused Santander to be deprived of its property.  The Chapter 2308 action does not fill the due process gap, and the District Court should be reversed.

**C.**    **The District Court failed to analyze the <u>Mathews</u> factors, which confirm Defendants' policy does not afford due process.**

To justify its holding that Defendants' policy provides due process, the District Court was required to balance three factors: (1) the private interest affected by the policy, (2) the risk of erroneous deprivation through the procedures used, and the probable value of different procedural safeguards, and (3) the government's interest, including the function involved and the fiscal/administrative burden of

23

different procedures.  <u>Mathews</u>, 424 U.S. at 335.  The District Court identified the need to do so, but never analyzed or applied the factors.  ROA.3704.

Of course, the absence of any hearing relating to the deprivations is, on its own, sufficient for this Court to reverse.  <u>Bowlby v. City of Aberdeen, Miss.</u>, 681 F.3d 215, 221 (5th Cir. 2012) (stating "the <u>Mathews</u> balancing tests permits varied types of hearing" but that it "demands more than no hearing at all."); <u>Parks v. "Mr. Ford"</u>, 556 F.2d 132, 142 (3d Cir. 1977) (invalidating statute that provided no hearing at all); <u>Lawrence</u>, 406 F.3d at 1233 (where "ordinance provides no hearing whatsoever," one "need not understand the niceties of <u>Mathews</u> to know that it is unconstitutional.").

Nonetheless, the <u>Mathews</u> test confirms the policy violates due process.

### i. *Santander's private interests in the Vehicles were substantial.*

A lien is a constitutionally protected property right. <u>Armstrong</u>, 364 U.S. at 44; <u>Mennonite Bd. of Missions</u>, 462 U.S. at 798.  A lienholder's property interest in a seized vehicle is considerable. <u>Ford Motor Credit Co.</u>, 503 F.3d at 191; <u>see also</u> <u>Honda Lease Tr.</u>, 152 F.4th at 484 (holding the same as to a lessor of a seized vehicle).  As described in §II(A), Defendants' policy deprived Santander of these significant property rights.  Thus, the first <u>Mathews</u> factor favors Santander.

### ii.    *The current policy creates substantial risk of erroneous deprivation.*

The second *Mathews* factor exposes San Antonio's fundamental due process failure. In <u>Matthias</u>, this Court's methodology was to analyze each aspect of a policy for risk of error. 906 F.2d at 1052 (assessing various separate risks of erroneous deprivation). Doing so with San Antonio's lienholder policy demonstrates a high risk of erroneous deprivation as to each of the 8 policy-created deprivations.

#### *(1) Precluding Santander from taking possession for 10 days.*

This creates a high risk of erroneous deprivation because a blanket, irrebuttable 10-day wait erroneously deprives a lienholder of right to take immediate possession—protected by its contract and Tex. Bus & Com. Code Ann. § 9.609—every single time. <u>Vlandis v. Kline</u>, 412 U.S. 441, 446 (1973) (A presumption "which operates to deny a fair opportunity to rebut it violates the due process clause…."). Even if the *circumstances* of default were somehow debatable—and they are not—that San Antonio's policy violates Texas law shows that the risk of error is high. <u>Fuentes</u>, 407 U.S. at 86 (Even a "three-day" or "10-day" denial of property rights is within the protection of the Fourteenth Amendment.)

#### *(2) Precluding Santander from taking possession unless San Antonio is satisfied that payment is 30-days past due.*

This is another immutable, irrebuttable presumption which violates due process because Santander is denied any opportunity to rebut it. <u>Vlandis</u>, 412 U.S. at 446. Requiring Santander to prove, to Defendants unchecked satisfaction, that its

customer has not paid for 30 or more days, also creates a high risk of error because Santander is erroneously deprived of its rights under state law to take possession immediately after a missed payment, with no 30-day waiting period. Palmer, 408 F.3d at 1370. Again, errors are guaranteed in every instance because local law cannot override state law.

Moreover, Defendants' demand for a specific letter from Santander to its customer regarding the payment default rests on a faulty assumption about vehicle lending, *i.e.* that lienholders immediately send such letters the moment a customer misses a payment. ROA.269-270. There is thus a high risk of erroneous deprivation because circumstances may often meet the Ordinance's requirements—that an owner is 30-days past due on payment—without Santander being able to provide a letter without creating one, bespoke, merely to satisfy Defendants' policy. Id.

### *(3) Precluding Santander from taking possession unless it provides a bond in the "mortgage amount."*

This creates a high risk of error, because the policy contains no guidance for determining how Defendants must evaluate the "mortgage amount," leaving the propriety of a bond to Defendants' complete discretion. Honda Lease Tr., 152 F.4th at 486 (discussing the risk of erroneous deprivation based on a policy's lack of "any guidance" to the tow company implementing it). Defendants have an obvious monetary incentive to reject bonds, because Wrecker charges daily storage fees— earning more through delay—and both Defendants profit from "deeming" vehicles

26

to be abandoned rather than releasing them.  Matthias, 906 F.2d at 1053 (stating that "[d]etailed directions on how" to comply "would help protect people's property interests by curbing the officers' almost complete discretion").

### (4) Excluding Santander from possession unless "a separate indemnification agreement is signed."

This demand creates a high risk of error because there is no basis in the police power that permits the government to force citizens to indemnify the government as a condition for protecting property rights.  That San Antonio wants indemnity is beside the point; there is no law supporting its demand for an indemnity in exchange for returning property to one who is already entitled to possess it. United States v. McKinnon, 681 F.3d 203, 208 (5th Cir. 2012) (stating that "limiting an officer's liability" is not "related to purposes of the community caretaking exception.")

### (5) Excluding Santander until storage fees are paid.

This creates a high risk of error because the lack of review over unilateral demands for money encourage bad faith decisions:

> Few procedures... are more likely to encourage such miscarriages, than this one; a unilateral statement taken from one party, that the other party owes him money, is accepted as a true and enforceable obligation, and that the other party is never allowed to challenge the accuracy of the amount claimed.

Morgan v. Wofford, 472 F.2d 822, 827 (5th Cir. 1973). Notably, the Chapter 2308 action allows review of the *towing* fee but does not include a review of *storage* fees.

27

Tex. Occ. Code Ann. § 2308.458.[11] As such, the detention of vehicles to force payment is done summarily and unilaterally. Since Fuentes, no Court (other than the District Court) has held that the government may impose storage fees without affording an opportunity to have a neutral review of those fees.

### *(6) Terminating Santander's rights and interests by deeming them to be waived and abandoned.*

This unilateral action creates the highest risk of erroneous deprivation because Defendants projected a false position on Santander—that it abandoned vehicles—and use that false premise as the excuse to summarily destroy Santander's interests.

The District Court also erroneously stated that "Santander fail[ed] to address" Defendants' argument that Defendants' policy of "deeming" a lienholder to have waived its rights by not complying with the Ordinance is similar to that adopted under State law.  ROA.3707 (citing and discussing Tex. Occ. Code §2303.154).[12]

---

[11] The statute refers only to "a towing charge" under § 2308.201-203, which only discuss "tow fees," and a "towing charge" under § 2308.0575, which solely applies to "fees that may be charged in connection with a private property tow," including "fees, other than tow fees."  This demonstrates a statutory intent to differentiate between "tow fees" and "fees, other than tow fees" which in turn means the Chapter 2308 action relates solely to "tow fees" but *not* storage fees.

[12] Tex. Occ. Code §2303.154 does not apply on its face, since it *solely* requires payment of storage fees to reclaim a vehicle. See generally Tex. Occ. Code §2303.151-161.  It also states that the "operator of a vehicle storage facility… may not charge an additional fee… other than a fee authorized by this section," and "this section controls over any conflicting municipal ordinance."  Id. at §2303.155(f-g).  It is thus inapplicable to Defendants' deeming of abandonment for *other* reasons, such as failure to provide a bond, indemnity, or prove a certain type of default.

Santander cited Supreme Court precedent rejecting the argument that an owner "constructively abandoned her property by failing to comply with a reasonable condition," i.e. payment of taxes, in a case the District Court failed to analyze. Tyler v. Hennepin Cnty., Minnesota, 598 U.S. 631, 646 (2023). The Court expressly held that "deeming" property to be constructively abandoned, when it was not *actually* abandoned, is not an appropriate constitutional work around, as "[p]roperty rights cannot be so easily manipulated." Id. at 645 (citing Cedar Point Nursery v. Hassid, 594 U.S. 139, 155 (2021)). Other Courts have rendered similar holdings:

> Just as "a State may not sidestep the Takings Clause by disavowing traditional property interests long recognized under state law," Phillips v. Washington Level Found., 524 U.S. 156, 167 (1988), so too a municipality may not sidestep the demands of due process by calling property "abandoned" when none of the traditional markers of abandonment are present. Were we to hold otherwise, local governments could opt out of the Due Process Clause altogether by recharacterizing any deprivation as an abandonment. See Hall v. Meisner, 51 F.4th 185, 190 (6th Cir. 2022) ("[T]he Takings Clause would be a dead letter if a state could simply exclude from its definition of property any interest that the state wished to take.").

Todman v. Mayor of City of Baltimore, 104 F.4th 479, 494 (4th Cir. 2024). And this Circuit has similarly stated that the government "may not rely upon a legal fiction of implied waiver of due process rights to cure constitutional defects." Davis Oil Co. v. Mills, 873 F.2d 774, 778 (5th Cir. 1989). Yet other courts have applied this reasoning to seized vehicles. See, e.g. McKee v. Heggy, 703 F.2d 479, 482 (10th Cir. 1983)(stating the government's "ability to dispose of abandoned property does

29

not enable its law enforcement officers to take a citizen's property and dispose of it as they see fit simply by labeling it 'abandoned.'"); <u>Ford Motor Credit Co. v. New York City Police Dep't</u>, 394 F. Supp. 2d 600, 614 (S.D.N.Y. 2005) ("the City cannot escape constitutional limitations... by simply labeling vehicles abandoned.").

<u>Tyler</u>'s mandate is clear: the government cannot sidestep constitutional duties by deeming property to be abandoned. A policy, such as San Antonio's, that denies constitutional safeguards and instead deems property to be waived and abandoned, is *per se* unconstitutional, and thus, creates the highest possible risk of error.

### *(7, 8) Selling vehicles (sometimes to San Antonio for $1), and appropriating unclaimed proceeds.*

Defendants' intrusive disposal-related activities create an extremely high risk of erroneous deprivation. Defendants admittedly earn money from auctioning unclaimed vehicles, yet no neutral supervises the "sale" process. No neutral guarantees the sale is fair, as proven by the fact that sometimes San Antonio pays $1, *i.e.* guaranteeing there would be no excess proceeds and appropriating the Vehicle for its own use. Moreover, no neutral makes any determination that a claimant has, in fact, failed to claim excess proceeds.

\*     \*     \*

In summary, every step in Defendants' policy presents high risk of error, which places this factor in Santander's favor.

### iii. *There would be great value in additional or different safeguards.*

As to the second portion of the second <u>Mathews</u> factor—whether additional procedural safeguards would ameliorate the risks—the Fifth Circuit succinctly stated that "formally reviewing officers' decisions and actions before disposing of property also would safeguard individuals' property interests far more than the current system," which involves no such review. <u>Matthias</u>, 906 F.2d at 1047. Due process permits participation in "government decisions," which reduces error. <u>Id.</u> at 1052.

The probable value of a hearing is evident. Most importantly, a neutral could find that Santander did not abandon its rights, but was instead thwarted by Defendants' possibly self-serving but erroneous positions. For example, a neutral could find that Santander had complied with all lawful requirements to recover a vehicle. Or, a neutral could find mistakes in the amount of storage fees being charged, a major benefit as opposed to the current policy, where Wrecker unilaterally decides whether its own daily-accruing fees have been properly assessed. A neutral could also find that Defendants' requests for certain paperwork is mistaken, another obvious risk associated with the current policy of Wrecker unilaterally determining compliance. <u>Honda Lease Tr.</u>, 152 F.4th at 486.

Quite simply, the risk of error inherent in San Antonio's policy is extraordinarily high. The value of affording neutral review is indisputable.

31

### iv.    *Defendants' interests do not justify the current policy.*

As to the third <u>Mathews</u> factor, the relevant question is *not* the general interest in law enforcement, but rather the burden Defendants would face if they had to afford the opportunity for a neutral review of the 8 lienholder deprivations caused by their own policy. <u>James Daniel Good</u>, 510 U.S. at 56. (assessing the specific interest in causing a deprivation ex parte). "[A] hearing always involves some cost in time, effort, and expense, and it is often more efficient to dispense with the opportunity for such hearing. But these rather ordinary costs cannot outweigh the constitutional right." <u>Fuentes</u>, 407 U.S. at 90-91 n. 22.  "While the problem of additional expense must be kept in mind, it does not justify denying a hearing meeting the ordinary standards of due process." <u>Bell</u>, 402 U.S. at 541-42 (quotation omitted).

At no point have defendants ever presented any evidence that affording a hearing as to the 8 lienholder deprivations would present any burden at all. Defendants merely suggest that they should not bear any burden for any hearing, because Texas has decided that the justice of the peace court (operated by Bexar County) should bear the burden of the Chapter 2308 action. Defendants presently bear *no* burden relating to *any* hearings, because they do not operate the justice of the peace court, and the Chapter  2308 action must be initiated by the claimant, who also bears the burden of proving a *lack* of probable cause in that action.

32

Defendants are therefore not being asked to provide more than one opportunity for a hearing, because they presently provide none. The Defendants' own policy causes 8 deprivations, and Defendants must comply with the Due Process Clause by affording neutral review—once—of those deprivations. Defendants would merely bear the "rather ordinary costs" discussed by Fuentes.

While not binding, District Courts have recently analyzed this factor persuasively in favor of additional safeguards:

> [T]he City's general interest in enforcing traffic-ticket judgments… is irrelevant…. The relevant question concerns the burden that Defendants would face if [they] had to provide Plaintiff's requested additional safeguard, which is "only one hearing before a neutral" decisionmaker…. Defendants have no answer to whether and how holding a hearing… would impose a burden.

Mercedes-Benz Fin. Servs. USA, LLC v. City of New York, 770 F. Supp. 3d 643, 660 (S.D.N.Y. 2025) (emphasis added); see also Santander Consumer USA, Inc. v. Nassau, 623 F. Supp. 3d 6, 19–20 (E.D.N.Y. 2022)("defendant does not address the deprivations at issue, which are… attachment of conditions to the car's release… or explain how… seiz[ing] a car and assert[ing] a lien without a hearing supports a government interest").

Here, Defendants' need only provide one hearing, but it must be meaningful and address all of the 8 deprivations, for which there is currently no review.

     *v.*         ***All three <u>Mathews</u> factors favor Santander's argument for a different policy involving a meaningful hearing that addresses all relevant deprivations.***

All three <u>Mathews</u> factors weigh in Santander's favor, and indicate not only that *some* hearing must be afforded at *some* time, but that there must be a *meaningful* hearing at a *meaningful* time that addresses all relevant deprivations, rather than the current, perfunctory cross-reference to a state statute that limits itself to only two issues. Defendants' policy must be reformed, and to bring about this reform, the District Court's decision must be reversed.

    **D.**     **Any reliance on the Chapter 2308 action fails solely because that action cannot possibly occur at a meaningful time.**

A Chapter 2308 action must be filed within 14 days towing the vehicle. Tex. Occ. Code §2308.456. This short timeframe works, because 14 days is ample time to address the statute's purpose of reviewing the propriety of the tow and tow fee. But the 14-day limit makes no sense when shoehorning Defendants' 8 policy deprivations into a Chapter 2308 action.

Santander cannot even attempt to retrieve a vehicle for 10 days under Defendants' policy. That would leave an unworkable 4 days to try, be rejected by Defendants (for whatever reason), and then seek a hearing. And some of the worst deprivations could not *possibly* occur *before* the deadline to institute a Chapter 2308 action. Santander's rights cannot be "deemed abandoned" for 20 days, which is necessarily beyond the 14-day Chapter 2308 window. Thus, Santander *never* could

34

seek a hearing on the most serious deprivation: the decision that it had completely waived and abandoned its rights.

There is simply no way a Chapter 2308 action could provide a hearing at a "meaningful time" as required.  Mathews, 424 U.S. at 333.

Moreover, the Ordinance requires that Santander present proof that its customer missed a payment at least 30 days before Santander becomes  eligible to recover a vehicle. Yet if Santander does not recover a vehicle within 20 days, Santander is deemed to waive and abandon its rights and interests. Combined, that means Santander *automatically* loses its property rights where the customer's payment is current on the date Defendants transmit the "Abandonment notice" letter, because it will take at least 30 *more* days for the account to be 30-days in default, but only 20 for Santander to allegedly "abandon" its rights.  San Antonio has set up an impossibility trap where Santander is summarily deprived of property.

This is exactly what happened with at least 8 of the Vehicles[13] which were not more than 30 days in payment default before the 20 day imposed waiver date. See ROA.268-269, 273-274.  For instance, Tyler Tucker did not miss a payment on the Tucker Vehicle until March 1, 2024, but San Antonio transmitted the "Law Enforcement Abandonment Notice" on February 2, 2024.  Compare ROA.268-269

---

[13] This includes the Goertz, Hernandez, Jimenez, Longoria, Munro, Pineda, Seals and Tucker Vehicles.

with ROA.267. Therefore, the 21st day after the "abandonment notice" for the Tucker Vehicle was February 27, 2024, and Santander's rights were automatically "deemed abandoned" on that day, while its customer *still* was not 30 days in payment default. Thus, Santander would *never* have been allowed to retrieve this Vehicle. Yet it was obvious, even to Defendants, that Santander did not abandon its rights, given that Defendants were happy to take $2,143.55 and return the Vehicle to Santander, anyway (apparently choosing, in this instance, not to enforce that part of the policy).[14] The same is true for the Hernandez Vehicle, which was only 18 days in default on the 21st day after the "abandonment notice." ROA.263-264, 268-269. In that instance, too, Defendants were happy to ignore the automatic waiver of Santander's rights and instead take $7,477.75 in exchange for that Vehicle.

It is beside the point that Santander was able to stop the loss of its collateral in some instances. The existence of this impossibility trap is a further indicator that the Defendants' current procedures create an extremely high risk of erroneous deprivation by use of an unchallengeable and automatic legal fiction that a vehicle has been abandoned. See also §II(C)(ii)(6), *supra*. This underscores the need for additional procedural safeguards that include neutral review.

---

[14] Defendants will no doubt assert that they typically wait longer, and have not sold the Tucker Vehicle. But a voluntary decision to refrain from creating this impossibility trap does not render the policy any less problematic.

36

**E.    Defendants' policy fails to provide due process for three additional reasons.**

**First**, the Defendants' two-letter notification process does not satisfy the notice element of due process, because it does not refer to a hearing regarding the deprivations at issue; instead, it contains an incorrect citation that (presumably) is meant to refer only to the Chapter 2308 action. The District Court described these letters as notice "of the conditions for release of the Vehicles and how to satisfy the conditions for release… as well as notice the Vehicles would be deemed abandoned and sold if the Vehicles were not retrieved." ROA.3706.

But a "notification procedure" that merely "apprise a [respondent] of the threat" to their property is not a proper notice, which must be "'reasonably calculated' to inform them of 'an opportunity to present their objections….'" Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14-15 (1978)(citing Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)).

> The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending "hearing." Notice in a case of this kind does not comport with constitutional requirements when it does not advise [respondents] of the availability of a procedure for protesting [the government's action]… As no such notice was given respondents… they were deprived of the notice which was their due.

Id. Neither letter advises of the availability of a procedure for protesting the Defendants' 8 policy deprivations. Thus, the letters do not provide a Mullane- and Memphis Light-compliant notice.

37

The reference to Section 683.003 is also faulty and misleading. Butler v. Castro, 896 F.2d 698, 703 (2d Cir. 1990) (finding inaccurate and obsolete information insufficient to satisfy the notice requirement); Pesce v. City of Des Moines, Iowa, 439 F. Supp. 3d 1101, 1123 (S.D. Iowa 2020) ("It follows that notice containing false information about how to retrieve seized property…does not satisfy the notice requirements of due process.").

**Second**, the Chapter 2308 action does not occur unless an affected person files a court action. Over 50 years ago, the Supreme Court rejected the notion that due process is satisfied where a hearing exists only if  "the aggrieved person shoulders the burden of initiating one." Fuentes, 407 U.S. at 80. The due process obligation falls on the government, and cannot be shifted so as to make the person facing loss of property do the government's work for it. Mennonite Bd. of Missions, 462 U.S. at 799 ("[A] party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation.").

**Third**, due process is not satisfied where the private person must disprove an element of the government's position. Walton v. Arizona, 497 U.S. 639, 650 (1990); Armstrong v. Manzo, 380 U.S. 545, 551 (1965).  The 2308 action fails this standard, because §2308.458(b-1)(1) states that "the burden of proof is on the person who requested the hearing" to prove that the tow was *improper*.  This is backwards and unworkable, as there are hundreds of possible reasons why police could properly

38

seize a vehicle, and the private person would have to guess and disprove each one before the police would have to present evidence supporting probable cause. This absurdity is yet another reason the Chapter 2308 action fails due process.

**F.     The District Court erred in holding that disposition of seized property does not require due process.**

Disposal of property is a final deprivation requiring due process. <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 434 (1982) ("[T]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim."). The Fifth Circuit has stated that "[w]hen a car is towed or impounded, some form of fair and impartial hearing at which an owner is provided an opportunity to challenge [the tow] ***and*** assessing charges against him must be provided…." <u>Breath</u>, 729 F. 2d at 1011 (citing <u>Craig v. Carson</u>, 449 F. Supp. 385, 395 (M.D. Fla. 1978))(emphasis added)(other citations omitted). A hearing regarding the tow "***and***" the charges must be provided; here, San Antonio recognizes that state law allows a Chapter 2308 action as to the tow and tow fee, but admits that the scope of such action does not include review of San Antonio's storage fees and other deprivations.  In <u>Breath</u>, the government placed only one condition on disposal (payment of charges). But here, the Defendants' policy includes 8 deprivations of a lienholder's rights.   While Due Process does not prohibit San Antonio from imposing as many mandates on release as it wants, Due Process requires it to afford a hearing for whatever it imposes.

Matthias reviewed the City of Houston's treatment of lawfully seized property which it *then* disposed of by local ordinance which did not afford notice and a hearing *about the disposal*. 906 F.2d at 1058. The Fifth Circuit did not hold that the admittedly lawful seizure (*intake*) allowed the City to dispose of the property at will. Rather, regardless of the lawfulness of the initial seizure, the deprivation caused by *disposal* requires separate due process review, and a policy that eschews such review under a city ordinance "blatantly violate[d] the Due Process Clause." Matthias, 906 F.2d at 1058; see also Cooper, 904 F.2d at 304 (Agreeing that due process is required before "disposition" of seized property).

The Eighth Circuit concurs that due process must be satisfied for ***both*** seizure ***and*** disposal of property. Lathon v. City of St. Louis, 242 F.3d 841, 843 (8th Cir. 2001) ("[t]he pivotal deprivation… was not the initial seizure… but the refusal to return them without a court order after it was determined that these items were not contraband or required as evidence...."); Walters v. Wolf, 660 F.3d 307, 314 (8th Cir. 2011) ("This case... involves two deprivations: the first being [the] initial seizure... and the second being... refusal to surrender the property... [the] second deprivation require[d] a new due process analysis...").

No Circuit Court has allowed government to dispose of lawfully seized property without affording the opportunity for a hearing concerning the disposal. Lawrence, 406 F.3d at 1233 (holding that a hearing is required "where, as here, the

40

state not only impounds the vehicles but permanently disposes of them"); <u>Alexandre v. Cortes</u>, 140 F.3d 406, 413 (2nd Cir. 1998) (holding that a city's disposal of a vehicle with no opportunity to contest the disposition violates due process). Disposal related deprivations require due process, and Defendants provide none.

**G.   The District Court incorrectly suggested it was Santander's responsibility to undo Defendants' unconstitutional acts.**

"[A] party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." <u>Mennonite Bd. of Missions</u>, 462 U.S. at 799 (1983); <u>Fuentes</u>, 407 U.S. at 84 (finding it irrelevant that the statute in question allowed plaintiff "to recover the goods if [the person] surrenders other property—a payment…" because even "a temporary, nonfinal deprivation of property is nonetheless a 'deprivation'"); <u>Craig</u>,[15] 449 F. Supp. at 395 (forcing hearing-free choice between one form of property—a vehicle—and another—money—still violates due process). "[I]t is [the municipality's] burden to show that its policies and procedures do not violate due process." <u>Honda Lease Tr.</u>, 152 F.4th at 485.

San Antonio has all of the power, and with that power comes the great responsibility to comply with the Constitution. That Santander could *possibly* have complied with Defendants' unconstitutional mandates—and *sometimes* did jump through all the right hoops—does not absolve Defendants from their liability in

---

[15] The Fifth Circuit cited this District Court case favorably in <u>Breath</u>, 729 F.2d at 1011 (citing <u>Craig</u>, 449 F. Supp. at 395).

violating the Constitution. <u>Small Engine Shop, Inc v. Cascio</u>, 878 F.2d 883, 889-90 (5th Cir. 1989)(in analyzing a statute that "shifts the entire burden of ensuring notice to the property owner subject to deprivation," stating that "Runnymede's legacy[16] cannot countenance this resolution in the face of <u>Mennonite</u>.")

### III.     The District Court erred in finding that Defendants did not violate the Fourth Amendment.

Warrantless searches and seizures are *per se* unreasonable unless they fall within a few narrowly defined exceptions. <u>United States v. Cardenas</u>, 9 F.3d 1139, 1147 (5th Cir. 1993)(citing <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 454-55 (1971)). "The exceptions are jealously and carefully drawn, and… [t]he burden is on those seeking the exemption to show the need for it." <u>Coolidge</u>, 403 U.S. at 455.

Separately, whether seized with or without a warrant, "[t]he general rule is that seized property, other than contraband, should be returned to its rightful owner once" the law enforcement need for it has "terminated." <u>Cooper</u>, 904 F.2d at 304 (citing <u>United States v. Farrell</u>, 606 F.2d 1341, 1343 (D.C.Cir.1979)).

Because seizures must be reasonably performed—a separate question from whether a warrant is required—Defendants' policy violates the Fourth Amendment because it results in an unreasonable refusal to return property once any legitimate law enforcement need has passed (here, community caretaking of a vehicle).

---

[16] A reference to the location at which King John signed the Magna Carta in 1215.

**A.    The Fourth Amendment's requirement that seizures be "reasonable" applies to all of Defendants' actions.**

The District Court agreed a "seizure" can include a course of conduct that continues to interfere with possessory rights, following McRae to decide the Fifth Circuit would apply Fourth Amendment protections to all conduct rather than merely an initial seizure.  ROA.3699-3700 (quoting U.S. v. McRae, 702 F.3d 806, 833 (5th Cir. 2012)); see also Duncan v. Barnes, 592 F.2d 1336 (5th Cir. 1979) (Section 1983 liability arises if a warrant is executed in an unreasonable manner).

This is the correct result, and complies with the Supreme Court's current jurisprudence on the Fourth Amendment.  Manuel v. City of Joliet, Ill., 580 U.S. 357, 368 (2017)(overruling Seventh Circuit lien of cases finding Fourth Amendment irrelevant to continued detention, as opposed to initial arrest, of a person); Jacobsen, 466 U.S. at 124 (stating, as to seized property, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment[]...."). The D.C. Circuit recently provided a persuasive and extensive discussion of the history and original meaning of the Fourth Amendment to demonstrate that its protections continue to apply to the ongoing retention of property.  Asinor v. D.C., 111 F.4th 1249, 1254 (D.C. Cir. 2024).

The District Court contradicted its own holding by not performing a "bifurcated analysis of the 'community caretaking' exception," dismissing

43

Santander's Fourth Amendment claims because San Antonio had an ostensibly valid exception to the warrant requirement. ROA.3702. This is the answer to the wrong question, because being excused from obtaining a warrant is unrelated to a seizure's reasonableness. "[R]easonableness is still the ultimate standard under the Fourth Amendment," and the District Court erred in not assessing the reasonableness of Defendants' conduct. Soldal, 506 U.S. at 71; see also Jacobsen, 466 U.S. at 124-25 ("bifurcating" its analysis of an initial seizure and a later, more intrusive test, finding both to be separately reasonable); South Dakota v. Opperman, 428 U.S. 364, 368 (1976) (discussing "the Fourth Amendment standard of 'reasonableness'" regarding "an inventory… search" of a vehicle *after* its initial seizure); Illinois v. Caballes, 543 U.S. 405, 408 (2005) ("[a] seizure… can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission.").

Community caretaking is premised on the principle that a police officer may seize property in furtherance of "public safety." Opperman, 428 U.S. at 368. Actions which do not enhance the safety of the public are not protected by the community caretaking warrant exception. McKinnon, 681 F.3d at 208. For example, "nothing in Opperman suggests that limiting an officer's liability"—as with San Antonio's requirement of an indemnity—"is in any way related to purposes of the community caretaking exception." Id. Rather, the Supreme Court "has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody

***where the process is aimed at securing or protecting the car and its contents*.**"

Opperman, 428 U.S. at 373.  Community caretaking is "not an open-ended license."

Caniglia v Strom, 593 U.S. 194, 199 (2007).

Assessing Defendants' policy and actions within this framework requires assessment of the reasonableness of each of their actions.  Towing the vehicles from the roadway following accidents, the arrest of the driver, or other traffic infractions rendering the operation of the vehicle unlawful might fall within the community caretaking exception.  ROA.3690.  But the 8 deprivations imposed on lienholder's by Defendants' policy are not, and the District Court erred by failing to analyze them separately for reasonableness and connection in scope to caretaking.

To start, refusing to return a seized vehicle until a lienholder posts a bond and indemnifies Defendants has nothing to do with securing the vehicle, but involves "limiting… liability" of Defendants in the manner the Fifth Circuit found is not "in any way related to purposes of the community caretaking exception" and therefore "irrelevant" to a community caretaking seizure.  McKinnon,   681 F.3d at 208

Refusing to release a vehicle unless Santander pays a towing fee is a similarly monetary, non-safety related concern that involves using possession to leverage payment, a practice several published District Court opinions have found inconsistent with community caretaking. Rosemont Taxicab Co. v. Philadelphia Parking Auth., 327 F. Supp. 3d 803, 822 (E.D. Pa. 2018)("[s]eizing a taxicab solely

as surety for the payment of fines… does not create a safety-based purpose for the seizure"); Harrell v. City of New York, 138 F. Supp. 3d 479, 492 (S.D.N.Y. 2015) (finding a municipality could not validly "seize property… and hold the property as leverage to ensure payment"); c.f Brewster v. City of Los Angeles, 672 F. Supp. 3d 872, 926 (C.D. Cal. 2023) ("the community caretaking exception cannot justify the ongoing seizure of the vehicle after it has been removed [from the road]").

Terminating a lienholder's rights through the fiction of constructive abandonment, the sale of the vehicle, and the retention of the proceeds are similarly about making money rather than safety. The Ahuyon, Cortez, Medina, and Stephens Vehicles were "sold" to San Antonio for $1, not so Defendants could protect the public from some risk but so San Antonio could confiscate these Vehicles for its own purposes.

Requiring the lienholder to wait 10 days (always) and 30 days (past payment default) is similarly unrelated to safety. It involves San Antonio's decision to "take sides" in a theoretical contest between Santander and its Customer. But Santander and its Customers' relationship are governed by contracts and the UCC, and San Antonio's second-guessing of these contracts and statutes is not justified by community caretaking.

This Court should follow the Third and Ninth Circuit's decision to apply this reasoning to seized vehicles:

46

The government may lawfully seize property if some Fourth Amendment justification exists… but this justification can run out…. [T]he Fourth Amendment requires that its initial seizure and continued retention be reasonable…. Under the caretaking exception… it is reasonable for a city to retain possession of a vehicle until the vehicle's owner or operator can demonstrate that the vehicle can be safely and lawfully removed.

Honda Lease Tr., 152 F.4th at 489.

[T]he community caretaking exception …. is available only to impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic. The exigency that justified the seizure vanished once the vehicle arrived in impound…. A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification.

Brewster v. Beck, 859 F.3d 1194, 1196-97 (9th Cir. 2017) (citations omitted).

No court has ever held that vehicles stored in a secure impound facility pose a risk to the public at large once someone appears to safely remove it. Accordingly, when Santander sought to recover the Vehicles, Defendants had no warrant or ongoing exception to the warrant requirement to justify their refusal to return the Vehicles to Santander. Defendants' interference violated the Fourth Amendment.

## B. Defendants' policies and actions interfered with Santander's possessory interests in violation of the Fourth Amendment.

The District Court's suggestion that the Fourth Amendment does not apply in the "context of the rights of a nonpossessory lienholder, such as Santander" is incorrect. ROA.3702.

47

First, a seizure "occurs when there is some meaningful interference with an individual's possessory interests in th[e seized] property." Jacobsen, 466 U.S. at 124. There is no dispute here that Santander had a "possessory interest" in the Vehicles by virtue of its RICs and the Texas UCC. See §II(A). Defendants simultaneously acknowledge the existence of that interest and their interference with it by agreeing they *would have* returned the Vehicles if Santander complied with their policies. Indeed, the entire purpose of the Ordinance is to neutralize lienholders' possessory interests, and return possession only if the lienholder complies.

Second, the District Court's holding contradicts Supreme Court authority. "The seizure may be made after the owner has relinquished control of the property to a third party or… from the immediate custody and control of the owner…." United States v. Place, 462 U.S. 696, 705-6 (1983). "Legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest…. [W]e again reject… that possession of the seized good is an acceptable measure of Fourth Amendment interests." United States v. Salvucci, 448 U.S. 83, 92 (1980) (citations and quotations omitted). The Court has "repeatedly repudiated the notion that arcane distinctions developed in property… law ought to control our Fourth Amendment inquiry." Id.

The District Court improperly relied on out-of-circuit, unpublished decisions for the idea that Santander's interest was non-possessory. ROA.3702. One actually

48

stated the opposite, that "a… lienholder's right in the… Vehicles" may be "transformed into a present possessory right to the Subject Vehicles, whether by default or breach of the relevant financing agreements between vehicle owners and Plaintiff" lienholder. Santander Consumer USA, Inc. v. Cnty. of Suffolk, No. 20-CV-2656(JS)(AKT), 2021 WL 4480574, at *10 (E.D.N.Y. Sept. 30, 2021). The case found the lienholder pled "a Fourth Amendment claim" to the extent the government detained vehicles without providing a hearing and "requir[ed] conditions of payment and a general release from liability" before returning seized vehicles. Id. at *11.

The other decision relied *solely* on a single comment in the UCC for the idea that a "nonpossessory security interest" is "not indistinguishable from a possessory security interest until after default *and the taking of possession*." Toyota Motor Credit Corp. v. Borough of Wyoming, PA, No. 3:23-cv-00377, 2025 WL 978209, at *7 (M.D. Pa. Mar. 31, 2025) (citing U.C.C. § 9-601 cmt. 4). That comment merely cross-references §9-207 (discussing "Rights and Duties of Secured Party Having Possession") to indicate it applies both to a secured party in possession from the beginning *and* a secured party that takes possession after a default. U.C.C. § 9-601 cmt. 4. This has nothing to do with a lienholder's ability to enforce its contractual right to repossess collateral. Even if it did, it is *precisely* the "arcane distinction[]" the Supreme Court found should not control the analysis. 448 U.S. at 92.

49

Moreover, Texas Law—which governs Santander's property rights—indicates that "a first lienholder generally has sufficient interest in the property to sue a third party for conversion even if the lienholder does not have a greater right to possession than the owner." John Deloach Enterprises, Inc. v. Telhio Credit Union, Inc., 582 S.W.3d 590, 596 (Tex. App.—San Antonio 2019, no pet.). That necessarily means the lienholder can assert its possessory rights *even if* it has not yet repossessed its collateral from the owner. Id.

It is indisputable that Defendants interfered with Santander's possessory rights. Defendants' interference constituted a "seizure," and violated the Fourth Amendment.

## IV.     The District Court erred in finding that Defendants did not violate the Takings Clause.

The Supreme Court has held that destruction of liens is a taking that requires compensation. Armstrong, 364 U.S. at 48. "[T]he Government has a categorical duty to pay just compensation when it takes your car." Horne v. Dep't. of Agric., 576 U.S. 350, 358-59 (2015). And the sale of property and retention of the proceeds based on constructive abandonment violates the Takings Clause. Tyler, 598 U.S. at 648. The District Court thus erred in holding there to be a blanket exception whereby towing and storing vehicles it not a "public use" and does not require compensation. ROA.3710.

Santander's liens are protected by the Fifth Amendment. Armstrong, 364 U.S. at 48.   While Armstrong involved liens that remained on property but became unenforceable, here Defendants' conduct is worse: Defendants expressly deemed the liens to be waived and abandoned, and sold 28 of the Vehicles, wiping out Santander's liens entirely.  Where, as here, "the Government was the direct, positive beneficiary" of the destruction of liens, the government is not to be relieved of the obligation to pay compensation for the value received. Id. at 49.

The Vehicles were also not taken for a private use, or for no use at all.  If San Antonio was permitted to tow and store these Vehicles, it must have been for a public use, because "[t]he 'public use' requirement is… coterminous with the scope of a [government's] police powers." Hawaii House Auth. v. Midkiff, 467 U.S. 229, 240 (1984).  The District Court even found "impounding and auctioning" the Vehicles were "governmental functions." ROA.3702.  These Vehicles were "pressed… into 'public use'" when they were "seized by public officials (police) to help… enforce state law." Frein v. Pennsylvania State Police, 47 F.4th 247, 251 (3rd Cir. 2022).

Thus, Santander's liens were taken, for public use, and without compensation, thereby "check[ing] all the Fifth Amendment boxes." Id. at 251.

The District Court's reliance on Bennis was mistaken.  ROA.3710 (citing Bennis v. Michigan, 516 U.S. 442, 453 (1996)).  Bennis applies when: (1) there is a substantive basis for forfeiture; (2) the government files a forfeiture lawsuit,

51

providing ample due process, and (3) that lawsuit concludes with a court order of forfeiture. 516 U.S. at 452 ("if the forfeiture proceeding here in question did not violate the Fourteenth Amendment… [t]he government may not be required to compensate an owner."). A similar exception[17] applies where property is held as evidence, *but ultimately returned*. See, e.g. Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1331–32 (Fed. Cir. 2006) (finding no taking where property is "seized as evidence…***but is ultimately returned to the owner***….").

Bennis is "no obstacle to [Santander's] takings claim" where the property was not "forfeitable as contraband, instrumentalities, or proceeds of a crime." Frein, 47 F.4th at 252-53. And "there is no police power exception that insulates" the government "from takings liability for the period ***after seized property is no longer needed***." Jenkins v. United States, 71 F.4th 1367, 1373 (Fed. Cir. 2023).

The Fifth Circuit recently stated "the mere fact that… property has been damaged or destroyed pursuant to the City's police power" is not dispositive on the question of Takings Clause liability. Baker v. City of McKinney, Tex., 84 F.4th 378 (5th Cir. 2023). This Circuit Court also emphasized that "history and tradition, including historical precedents, are of central importance when determining the

---

[17] Each case cited by the District Court fall within one of these two categories. See, e.g. Tate v. Dist. of Columbia, 627 F.3d 904, 909 (D.C. Cir. 2010)("[I]f the District's impoundment… did not deprive [plaintiff] of due process… then there was no unlawful taking…. The District's practice of auctioning a vehicle when tickets go unpaid is the culmination of a sort of graduated forfeiture");

meaning of the Takings Clause." Id. at 383 (citing Tyler, 598 U.S. at 637-44; Horne, 576 U.S. at 357-61).

History and tradition are clear: "early Americans bridled at appropriations of their personal property during the Revolutionary War," including "impressment by the Continental Army of Horses, Teems, and Carriages," and "the Takings Clause was probably adopted in response to" these takings during that war, "without any compensation whatever." Horne, 576 U.S. at 359 (citations and quotations omitted).

San Antonio literally took the modern equivalent of "Horses, Teems, and Carriages" by appropriating 34 of the Vehicles. Defendants retained 2 Vehicles to leverage payment, returned 4 only in exchange for over $25,000, sold 24 and kept the proceeds, and "sold" 4 to San Antonio for $1 for its own use. It is hard to see an action that fits the history of the Takings Clause *less* than this case, *especially* those 4 Vehicles which San Antonio pressed into service for its own purposes and the 2 that it still has.

Moreover, "deeming" Santander to have automatically abandoned its rights is a practice that has been repeatedly rejected. Phillips v. Washington Legal Foundation, 524 U.S. 156, 167 (1998) ("[A] State may not sidestep the Takings Clause by disavowing traditional property interests long recognized under State law."); see also §II(C)(ii)(6), *supra*. Statutes, ordinances and policies cannot be made to create a waiver and abandonment exception to the Takings Clause where

none exists. <u>Ohio Bell Tel. Co. v. Public Utilities Comm'n.</u>, 301 U.S. 392, 307 (1937) ("We do not presume acquiescence in the loss of fundamental rights.")

Quite simply, confiscation of property in this manner violates the Takings Clause where no compensation is paid.

## V.    <u>Santander's conversion and replevin claims were established.</u>

A vehicle lienholder may sue a towing company for conversion where the towing company improperly refuses to release the vehicle to the lienholder. <u>John Deloach Ent.</u>, 582 S.W.3d at 596. Wrecker's only justification for refusing to return the Vehicles was the policy at issue here, which is unconstitutional. When Wrecker relied on this unconstitutional policy, it also committed conversion. <u>Norton v. Shelby County</u>, 118 U.S. 425, 442 (1886)(actions in violation of the Constitution are void).

Similarly, the replevin claims relate to the two vehicles which remain in Wrecker's possession. Because its reason for refusing to release them are void and unconstitutional, Wrecker must be ordered to release them to Santander.

## VI.    <u>Summary judgment should be granted to Santander.</u>

Santander's argument for reversal of the District Court decision simultaneously supports its argument that it is entitled to summary judgment. The facts of this case establish conduct under color of law which deprived Santander of protected rights, and that the deprivation was carried out in accordance with San

54

Antonio's municipal policies.  No material fact is disputed, and Defendants admit that all relevant acts concerning the 34 Vehicles occurred exactly as intended under San Antonio's official policy.

Accordingly, a reversal of the District Court's decision, because Defendants' policy and actions are unconstitutional, also warrants granting Santander's summary judgment motion and entry of judgment that Defendants under 42 U.S.C. §1983.

## CONCLUSION

Santander respectfully requests reversal of the District Court's denial of Santander's summary judgment motion, and reversal of the grant of Defendants' motions, and that the matter be remanded with instructions that judgment be entered in favor of Santander.

Dated:  November 12, 2025                    **NORRIS McLAUGHLIN P.A.**

By:   */s/ Nicholas Duston*
Nicholas A. Duston, Esq.
400 Crossing Blvd. 8th Fl.
Bridgewater, NJ 08807
*Attorneys for Plaintiff-*
*Appellant Santander Consumer*
*USA, Inc.*

55

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Brief of Plaintiff-Appellant was served via the Court's ECF system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate procedure, on November 12, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

Dated:  November 12, 2025                    **NORRIS McLAUGHLIN P.A.**

By:   */s/ Nicholas Duston*
           Nicholas A. Duston, Esq.

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Nicholas A. Duston, hereby certify that:

1.      The brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 12,859 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  November 12, 2025                    **NORRIS McLAUGHLIN P.A.**

By:   */s/ Nicholas Duston*
           Nicholas A. Duston, Esq.